IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **PATRICK DRONE,** | ) |
| | ) |
|       **Plaintiff,** | ) |
| | ) |
| vs. | ) Civil No.  14-cv-1413-CJP[1] |
| | ) |
| **CAROLYN W. COLVIN,** | ) |
| **Acting Commissioner of Social** | ) |
| **Security,** | ) |
| | ) |
|       **Defendant.** | ) |

**MEMORANDUM and ORDER**

**PROUD, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff Patrick Drone is before the Court, represented by counsel, seeking judicial review of the final agency decision denying him Disability Insurance Benefits (DIB).

**Procedural History**

Plaintiff initially applied for benefits in November 2010, alleging disability beginning on January 1, 2010. Plaintiff later amended his onset date to June 1, 2011. (Tr. 17). The claim proceeded to a hearing before ALJ Kevin Martin, who issued an unfavorable decision on August 9, 2013. (Tr. 17-24). The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1). Administrative remedies have been exhausted and a timely complaint was filed in this court.

---

[1] This case was referred to the undersigned for final disposition on consent of the parties, pursuant to 28 U.S.C. §636(c).  See, Doc. 7.

**Issues Raised by Plaintiff**

Plaintiff raises the following point:

1. The ALJ erred in determining plaintiff had engaged in substantial gainful activity since his alleged onset date.

**Applicable Legal Standards**

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes. For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. §423(d)(1)(A).**

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. **42 U.S.C. §423(d)(3).** "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit. **20 C.F.R. §§ 404.1572.**

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are

2

> considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

***Weatherbee v. Astrue*, 649 F.3d 565, 568-569 (7th Cir. 2011).**

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. **20 C.F.R. §§ 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-513 (7th Cir. 2009); *Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir. 1992).**

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three. If the claimant does not have a listed impairment at step three, and cannot perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job. ***Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984).** See also, ***Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001**) (Under the five-step evaluation, an

3

"affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled… If a claimant reaches step 5, the burden shifts to the ALJ to establish that the claimant is capable of performing work in the national economy.").

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." **42 U.S.C. § 405(g)**. Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. See**, Books v. Chater, 91 F.3d 972, 977-78 (7th Cir. 1996)(citing *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995))**.

The Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." **Richardson v. Perales, 402 U.S. 389, 401 (1971).** In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. **Brewer v. Chater, 103 F.3d 1384, 1390 (7th Cir. 1997)**. However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, **Parker v. Astrue, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.**

## The Decision of the ALJ

ALJ Martin followed the analytical framework described above. He determined at step one that plaintiff had been engaged in substantial gainful activity since his alleged onset date. He also concluded that there had been no continuous twelve month period during which plaintiff had not engaged in substantial gainful activity.

## The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by plaintiff. As plaintiff's argument and the ALJ's opinion do not mention plaintiff's medical history, the Court will not undertake an extensive review of plaintiff's medical records.

1. **Agency Forms**

Plaintiff was born on April 13, 1966 and was forty-five years old at his amended onset date. (Tr. 35, 195). He was insured for DIB through December 31, 2016. (Tr. 19). Plaintiff was six feet one inch tall and weighed two hundred and eighty pounds. (Tr. 198).

Plaintiff previously worked as a mechanic for a tractor company, an owner and operator of a trucking business, a mechanic for a coal mine, and an owner and operator of a farming and excavating operation. (Tr. 199). Plaintiff felt his back injury and arthritis limited his ability to work. (Tr. 198). He took Hydrocodone

for his back pain, Indomethacin for arthritis, Lexapro for anxiety, Lisinopril for blood pressure, Omeprazole for heartburn, and Zyrtec for allergies. (Tr. 201).

Plaintiff completed two function reports. His first report was completed in January 2011. (Tr. 206-13). Plaintiff stated that he had difficulty walking on uneven ground, standing for any length of time, and driving for over an hour. (Tr. 206). On a daily basis, plaintiff stated he went to work and supervised his employee. (Tr. 207). He ordered parts for repairs on the farm at least weekly. (Tr. 209). The only place he went on a regular basis was to work. (Tr. 210). In the additional remarks plaintiff stated that he may be able to perform a desk job but had no training. His biggest concern was that his farming operation was no longer profitable because he had to pay an employee the salary he used to bring home. (Tr. 213).

Plaintiff's second function report was completed in June 2011. (Tr. 238-46). He stated that he could no longer stand for more than a few minutes, drive for more than thirty minutes, walk on soft grounds, or focus and stay alert. (Tr. 238). He no longer went to work daily but took a pain pill and sat in the recliner for most of the day. (Tr. 239). When prompted as to whether his ability to handle money has changed since his injury began, plaintiff responded that he gave up his business and now his wife does it all. (Tr. 242).

### 2. Evidentiary Hearing

Plaintiff was represented by counsel at the evidentiary hearing held on June 27, 2013. (Tr. 29-31). He amended his onset date to June 1, 2011 at the

beginning of the hearing. (Tr. 35). At the time of the hearing, plaintiff was forty-seven years old and weighed two hundred and seventy pounds. (Tr. 36). He lived in a home with his wife and was capable of driving. (Tr. 35-36). He primarily used a cane to help him walk but occasionally used a walker as well. He testified that he had not worked, applied for unemployment, or received any benefits since his alleged onset date. (Tr. 37). His wife was a school bus driver but he still primarily supported the family with money from his savings and retirement. (Tr. 38).

Plaintiff previously ran his own farming an excavating business. (Tr. 38). He had two younger men that helped him on the farm and they worked seven days a week. (Tr. 38-39). Plaintiff and his employees worked all year on maintaining the machinery, excavating the grounds, and planting, spraying, and harvesting the crops. He testified that the last time he performed any excavating work was the beginning of 2011. He still had the excavating equipment on hand at his farm. (Tr. 39).

In 2012, plaintiff and his brother entered a verbal agreement for his brother to begin renting his land for $150 per acre, totaling $70,000. Plaintiff's brother first paid plaintiff for the land January 1, 2013. (Tr. 40-42). Plaintiff testified that he was slowly selling his farming equipment to his brother for deed, but he technically still owned all the equipment. (Tr. 40). Plaintiff's brother used plaintiff's excavating equipment to maintain his ditches. (Tr. 40). Plaintiff stated that he occasionally answered his brother's questions about the farm and equipment bur did not provide advice on what crops to plant or when to plant

7

them. (Tr. 42). Plaintiff had not harvested the farmland, given advice on crops, or performed any maintenance on machinery since 2011. (Tr. 42-43).

The ALJ asked plaintiff about a medical record from the fall of 2011 that indicated plaintiff wanted to put off having a procedure because he was working to bring in the harvest with three coworkers. (Tr. 43). Plaintiff testified that he wanted to be around during the harvest since the crops were his, but he did not perform or supervise any work. (Tr. 43-44). Plaintiff stated that he did not want to miss hearing about how the harvest was going because he had been farming since he was eight years old. (Tr. 44). Sometimes plaintiff drove to his brother's shop to sit and watch what was happening. He never provided advice on maintenance or farming even though his brother used some of his equipment. (Tr. 49). Plaintiff testified that the last time he walked through the field to look at the crops was a few years prior. (Tr. 51). He was not sure which crops were planted in the fields that year or if they were financed. (Tr. 53).

### 3. Relevant Medical Records

On June 13, 2011 plaintiff's medical records indicate that his pain medications were not controlling his symptoms but he "continue[d] to try to work." (Tr. 323). In July 2011, plaintiff told a doctor that he was currently running his own farming business. He stated that he and his wife farmed over 600 acres, and he did all the repairs and maintenance work on the bulldozers and other farm vehicles. He had difficulty performing these tasks due to his pain. (Tr. 363). In October 2011, plaintiff stated he was taking a pain pill twice a day while

"working to bring in the harvest with three other coworkers." Additionally, he was too busy with the harvest to proceed with a CT myelogram. (Tr. 394). Finally, in April 2012, plaintiff told a doctor that his pain was decreasing and he only had to use his cane when he was in the field. (Tr. 413).

### 4. Farming Operations Information

In a work activity report from April 2011, plaintiff indicated he was the sole owner and operator of his farm and excavating business. Due to his injuries he had reduced his hours and hired additional help. (Tr. 224).

After the hearing, plaintiff submitted his 2012 tax return. He listed his occupation as "farmer" and reported farm expenses totaling $72,862 for custom hire machine work, depreciation, gasoline, repairs and maintenance, hand tools, and the telephone. (Tr. 173, 182). His income tax return also indicates he put 11,250 business or investment miles on his pickup truck. (Tr. 187). He reported $4,000 worth of sales from farm equipment. (Tr. 185).

### 5. Records Not Before ALJ

After the ALJ issued his decision, plaintiff submitted an explanation of the farming agreement written by his brother to the Appeals Council in connection with his request for review. See AC Exhibits List, Tr. 4. Thus, the document at Tr. 278, designated by the Appeals Council as Exhibit 16E was not before the ALJ.

The statement of explanation Tr. 278 cannot be considered by this court in determining whether the ALJ's decision was supported by substantial evidence. Records "submitted for the first time to the Appeals Council, though technically a

9

part of the administrative record, cannot be used as a basis for a finding of a reversible error." **Luna v. Shalala, 22 F.3d 687, 689 (7th Cir. 1994).** See also, **Farrell v. Astrue, 692 F.3d 767, 770 (7th Cir. 2012)**; **Getch v. Astrue, 539 F.3d 473, 484 (7th Cir. 2008)**; **Rice v. Barnhart, 384 F.3d 363, 366, n. 2 (7th Cir. 2004).**

## Analysis

Plaintiff argues that the ALJ improperly found plaintiff to have materially participated in his farming operation after his amended onset date. Plaintiff also contends that the ALJ failed to appropriately consider plaintiff's credibility.

As stated above, at step one in the evaluation process for DIB the ALJ must determine whether plaintiff has engaged in substantial gainful activity after his alleged onset date. The SSA has put forth evaluation guidelines to explain what constitutes substantial gainful activity when a person is self-employed. **20 C.F.R. §404.1575**. The guidelines at **§404.1575(a)(2)** first state,

> We will consider your activities and their value to your business to decide whether you have engaged in substantial gainful activity if you are self-employed. We will not consider your income alone because the amount of income you actually receive may depend on a number of different factors, such as capital investment and profit-sharing agreements. We will generally consider work that you were forced to stop or reduce to below substantial gainful activity after 6 months or less because of your impairment as an unsuccessful work attempt. . . . We will evaluate your work activity based on the value of your services to the business regardless of whether you receive an immediate income for your services. We determine whether you have engaged in substantial gainful activity by applying three tests. If you have not engaged in substantial gainful activity under test one, then we will consider tests two and three. The tests are as follows:

10

> (i) Test one: You have engaged in substantial gainful activity if you render services that are significant to the operation of the business and receive a substantial income from the business. Paragraphs (b) and (c) of this section explain what we mean by significant services and substantial income for purposes of this test.
> (ii) Test Two: You have engaged in substantial gainful activity if your work activity, in terms of factors such as hours, skills, energy output, efficiency, duties, and responsibilities, is comparable to that of unimpaired individuals in your community who are in the same or similar businesses as their means of livelihood.
> (iii) Test Three: You have engaged in substantial gainful activity if your work activity, although not comparable to that of unimpaired individuals, is clearly worth the amount shown in § 404.1574(b)(2) when considered in terms of its value to the business, or when compared to the salary that an owner would pay to an employee to do the work you are doing.

The guidelines go on to explain what significant services mean, stating in **§404.1575(b)(2)** that,

> If you are a farm landlord, that is, you rent farm land to another, we will consider you to be rendering significant services if you materially participate in the production or the management of the production of the things raised on the rented farm. (See §404.1082 of this chapter for an explanation of material participation.)

Finally, according to the guidelines "material participation" for farm rental income is when a claimant either (1) periodically advises or consults with the person who rents the farmland and the claimant periodically inspects the production activities on the land, or (2) furnishes a large portion of the machinery, tools, and livestock used in production, or advances money or assumes financial responsibility for a substantial part of the production of the commodities. **20 C.F.R. §404.1575(b)(2).**

Here, the ALJ found that plaintiff had participated in substantial gainful activity on his farmland for two reasons. First, statements in plaintiff's medical records indicated he still had an active role on the farm. He stated he was working to bring in the harvest with coworkers, he could not make time for a CT scan due to the harvest, and he was using his cane while he was "in the field." (Tr. 394, 413). Plaintiff argues that he was passively watching the harvest and wanted to make sure his coworkers were working. (Tr. 43-44). However, plaintiff plainly states in his records that he was trying to continue farming and was working to bring in the harvest. (Tr. 394, 413). Additionally, plaintiff stated he drove to the farm as often as possible to see what the workers were doing and would discuss how the crops were that year. He then testified he had not done this in a few years. (Tr. 43-44, 51). The ALJ felt the treatment notes and his statements were not consistent with someone who was passively watching the harvest take place, and this Court agrees. **20 C.F.R. §404.1575(b)(2).**

Second, plaintiff admittedly furnished a significant portion of the machinery and tools used in the production of the farm. Other than the $4,000 worth of equipment he sold to his brother, the remainder of the machinery in use at the farm still belonged to plaintiff. (Tr. 40). The regulations state that a claimant has materially participated in the operation of the farm for farm rental income when he furnishes a large portion of the machinery, tools, and livestock used in production. **20 C.F.R. §404.1575(b)(2).** Plaintiff makes no attempt to reconcile this fact other than stating he was in the process of transferring the equipment.

12

Therefore, plaintiff materially participated in the production of the land even if his medical records were misunderstood and he was passively watching the harvest in 2011.

Plaintiff also argues that the ALJ erred in his credibility determination. It is well-established that the credibility findings of the ALJ are to be accorded deference, particularly in view of the ALJ's opportunity to observe the witness. **Powers v. Apfel, 207 F.3d 431, 435 (7th Cir. 2000).** The ALJ is required to give "specific reasons" for his credibility findings and to analyze the evidence rather than simply describe the plaintiff's testimony. **Villano v. Astrue, 556 F.3d 558, 562 (7th Cir. 2009). See also, Terry v. Astrue, 580 F.3d 471, 478 (7th Cir. 2009)**(The ALJ "must justify the credibility finding with specific reasons supported by the record.").

The ALJ may rely on conflicts between plaintiff's testimony and the objective record, as "discrepancies between objective evidence and self-reports may suggest symptom exaggeration." **Getch v. Astrue, 539 F.3d 473, 483 (7th Cir. 2008).** However, if the adverse credibility finding is premised on inconsistencies between plaintiff's statements and other evidence in the record, the ALJ must identify and explain those inconsistencies. **Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001).**

First, the Commissioner correctly notes that the ALJ did not consider plaintiff's credibility regarding disabling symptoms, but instead found plaintiff not credible regarding his participation on the farm. (Tr. 23). The ALJ found plaintiff

13

to be less than credible because his testimony was contrary to portions of his disability forms, medical records, and tax returns. (Tr. 22-23).

Plaintiff argues that the ALJ erred first by relying on a perceived inconsistency in the disability forms and testimony. Plaintiff stated in a function report that he was no longer able to handle money because he had given up his business and his wife now did it all. He also stated at the hearing that his brother had taken over the production of his farm. (Tr. 242). In the ALJ's opinion he interprets plaintiff's statement on the function report as his wife had taken over the operation of his farm. (Tr. 22-23). This is clearly error.

However, this error is not reversible if the ALJ had other sound reasons for his credibility determination. The ALJ's credibility assessment need not be "flawless;" it passes muster as long as it is not "patently wrong." **Simila v. Astrue, 573 F.3d 503, 517 (7th Cir. 2009).** The ALJ went on to explain that portions of plaintiff's medical records state that he was participating in farming operations and was still "in the field" which was inconsistent with his testimony that he did not participate at all and had not been through the fields in years. (Tr. 22-23).

Plaintiff does not explain why he testified that he had not walked through the fields or looked at the crops in a few years while his medical records from 2012 state that he was using his cane in the field. He explains the inconsistency with his statements to doctors about work activities but testimony that he was not participating at all by stating that he wanted to be present and watch the harvest

14

that fall but did not actively participate in the production on the land. However, the ALJ is allowed to base an adverse credibility finding on identified and explained inconsistencies within the record, as he did here.

Additionally, plaintiff argues that his tax returns were consistent with someone who was in the process of selling off his equipment and transferring ownership of the farm. However, plaintiff conceded that he still owned the equipment his brother was using, and he failed to reconcile the portions of the tax records claiming expenses on gasoline, repairs and maintenance, and the additional miles plaintiff put on his truck. Therefore, the ALJ's credibility assessment is not patently wrong as he appropriately cited and explained inconsistencies within plaintiff's medical records and tax returns.

As the Commissioner notes, it is well established that the burden is on the plaintiff to prove at step one that he has not engaged in substantial gainful activity. ***Briscoe v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005).** Plaintiff simply failed to meet this burden. The ALJ's decision must be affirmed if it is supported by substantial evidence, and the Court cannot make its own credibility determination or substitute its judgment for that of the ALJ in reviewing for substantial evidence. ***Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012);** *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).**

## Conclusion

After careful review of the record as a whole, the Court is convinced that ALJ Martin committed no errors of law, and that his findings are supported by

substantial evidence. Accordingly, the final decision of the Commissioner of Social Security denying Patrick R. Drone's application for disability benefits is **AFFIRMED**.

The clerk of court shall enter judgment in favor of defendant.

**IT IS SO ORDRED.**

**DATE: January 15, 2016.**

<u>**s/ Clifford J. Proud**</u>

**CLIFFORD J. PROUD**

**UNITED STATES MAGISTRATE JUDGE**